UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-21129-MOORE/Elfenbein

*In re*

**GASTON BROWNE**
**CORRUPTION DISCOVERY APPLICATION**,

**YULIA GURYEVA-MOTLOKHOV**,

        Applicant,

**Pursuant to 28 U.S.C. § 1782 for**
**Judicial Assistance in Obtaining**
**Evidence for Use in a Foreign Proceeding**.
_____/

## ORDER ON YULIA GURYEVA-MOTLOKHOV'S *EX PARTE* APPLICATION FOR JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

**THIS CAUSE** is before the Court on Applicant Yulia Guryeva-Motlokhov's *Ex Parte* Application for Judicial Assistance Pursuant to 28 U.S.C. § 1782 (the "Application"), ECF No. [1]. The Honorable K. Michael Moore referred this matter to me "to take all necessary and proper action as required by law regarding all pre-trial, non-dispositive matters and for a Report and Recommendation on any dispositive matters." *See* ECF No. [6]. For the reasons explained below, the Application, **ECF No. [1]**, is **GRANTED**.

**I.**    **BACKGROUND**

In the Application, Applicant asks the Court for an order allowing her to serve Northrop & Johnson Yachts-Ships LLC ("Northrop") with "the subpoena attached as Exhibit 13" to the Application. *See* ECF No. [1] at 1. Applicant explains "the requested relief aims to obtain necessary discovery to support three ongoing foreign proceedings," *see* ECF No. [1] at 1, that she

has initiated or intends to initiate: (1) a 2023 civil action in Antigua and Barbuda "challenging the constitutionality of" a legislative act Applicant claims violated her rights "under sections 3 and 9 of the Constitution of Antigua and Barbuda" (the "Antiguan Proceeding"), *see* ECF No. [1-1] at 9; (2) a "recently instituted civil" action in the Russian Federation "seeking recovery of damages" for the illegal expropriation of Applicant's yacht and artwork (the "Russian Proceeding"), *see* ECF No. [1-1] at 38; and (3) a "criminal complaint" Applicant "is contemplating filing" in the United Arab Emirates (the "Contemplated Criminal Proceeding"), *see* ECF No. [1-1] at 38.

In a Memorandum in Support of the Application (the "Supporting Memo"), Applicant further explains that all three proceedings arise out of what she contends was the illegal seizure and sale of the $120 million superyacht *Alfa Nero*. See ECF No. [1-1] at 5–17. Two trusts of which "Applicant is currently the sole adult beneficiary," owned the *Alfa Nero* and its onboard artwork. *See* ECF No. [1-1] at 5–6. "When conflict in Ukraine broke out in February 2022, the *Alfa Nero* was located in Antigua and was not sanctioned,"[1] but "Antiguan officials publicly refused to allow the vessel to leave the harbor or provide fuel for the vessel except limited emergency supplies to keep the vessel functional," leaving it "effectively frozen by Antiguan authorities and functionally unable to leave Antigua." *See* ECF No. [1-1] at 6–7.

Beginning in early March 2023, Applicant's agent repeatedly tried to inform the Antiguan Attorney General of Applicant's ownership interests in the *Alfa Nero* and its onboard artwork, but the agent got no response. *See* ECF No. [1-1] at 8–9. Several weeks later, in late March 2023, the Antiguan government passed legislation authorizing the Antiguan port manager "to declare vessels abandoned" and "sell them at auction." *See* ECF No. [1-1] at 10–11. Using his new powers, the

---

[1] Applicant notes that the U.S. Department of Treasury's Office of Foreign Assets Control sanctioned her father and declared the *Alfa Nero* "blocked property" in August 2022, but the vessel was removed from the sanctions list in June 2023 "to facilitate the Antiguan government's attempts to sell" it. *See* ECF No. [1-1] at 7.

port manager "determined that the Alfa Nero posed an imminent threat to the harbor and the economy of Antigua and announc[ed] an intent to auction" it. *See* ECF No. [1-1] at 11. When Applicant's agent finally spoke to the Attorney General in early April, he was redirected to the port manager, but despite "repeatedly" emailing and otherwise attempting to contact the port manager to "prevent any confiscation or sale" of the *Alfa Nero*, he never responded. *See* ECF No. [1-1] at 8. So, in June 2023, Applicant filed the Antiguan Proceeding, which she notes is "ongoing." *See* ECF No. [1-1] at 8–10.

The *Alfa Nero* was ultimately sold in July 2024 through Northrop, which is a yacht broker. *See* ECF No. [1-1] at 14. The sale was "a private transaction" to an "undisclosed" buyer. *See* ECF No. [1-1] at 14. The purchase price was reportedly $40 million, which is less than the $67 million high bid received during the public auction. *See* ECF No. [1-1] at 11–13.

"Following the July 2024 sale, Applicant sought disclosure from the Antiguan courts regarding the distribution of the proceeds." *See* ECF No. [1-1] at 15. After the court in the Antiguan Proceedings "ordered the government to file an affidavit and submit relevant documents detailing the sale of the *Alfa Nero*," the government disclosed documents accounting for about $36 million of the $40 million purchase price. *See* ECF No. [1-1] at 15–16. But the disclosures failed to account for the remaining $4 million, did not indicate whether there had been a pre-sale deposit, and did not include the payment of Northrop's 4.5% commission. *See* ECF No. [1-1] at 16. The disclosures also did not identify the buyer, but according to Applicant's investigators, the buyers were "Robert Yildirim and Ali Riza Yildirim of the Yildirim Group," a Turkish construction and shipping conglomerate, which holds the *Alfa Nero* through the Maltese entity YM Thunder I Shipping Limited ("YM Thunder"). *See* ECF No. [1-1] at 14.

Applicant's investigators tried to review "the original sale and payment records for the

2024 *Alfa Nero* sale" using Antiguan public records laws, but they were unable to do so because "they had apparently gone missing." *See* ECF No. [1-1] at 17. The Financial Secretary of the Antiguan Ministry of Finance and Corporate Governance "speculated to the investigators that the" documents "had possibly been moved within the custody of the Ministry of Finance," which is run by Minister of Finance and Prime Minister Gaston Browne. *See* ECF No. [1-1] at 17. According to Applicant, "Browne was strategically involved in the acquisition and subsequent sale of the *Alfa Nero*," *see* ECF No. [1-1] at 19, and his "administration was set to receive up to a 50% commission" on the sale, *see* ECF No. [1-1] at 15. He has also generally "faced various allegations of corruption, illegal enrichment, and conflicts of interest." *See* ECF No. [1-1] at 19.

Applicant asserts that "Browne orchestrated the sale of the *Alfa Nero* for self-interested purposes, and evidence of this corrupt motive would be critical in the" three foreign proceedings for which she seeks discovery through § 1782. *See* ECF No. [1-1] at 20. In addition to helping prove in the Antiguan Proceeding that the sale of the *Alfa Nero* was the improper result of Prime Minister Browne's self-interest, the discovery Applicant seeks would aid the Russian Proceeding because it is directed at the buyers (the Yildirim Group) and current owner (YM Thunder) of the *Alfa Nero*. *See* ECF No. [1-1] at 38. And it would aid the Contemplated Criminal Proceeding because that litigation will likely include "claims against Browne and potentially the Yildirims" for "transacting in or hiding criminal proceeds under" UAE law. *See* ECF No. [1-1] at 38.

As to the specific materials sought, Applicant seeks documents from Northrop, the yacht broker that facilitated the sale of the *Alfa Nero*, *see* ECF No. [1-1] at 39, concerning the sale, including: (1) any prospective or actual buyer; (2) any payment for the yacht; (3) the disposition of the sale proceeds; (4) any charter or rental of the yacht; and (5) all communications with Browne, the port manager, the Finance Secretary, the Yildirims, the Yildirim Group, and several

others, *see* ECF No. [1-15] at 7, 11.  Northrop has offices in this District, but it does not have offices in Antigua.  *See* ECF No. [1-1] at 39.

Applicant argues the Court should grant the Application because it meets all four statutory requirements under § 1782 and all four discretionary factors the Supreme Court set out in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  *See* ECF No. [1] at 2; ECF No. [1-1] at 39–47.  Specifically, as to the statutory requirements, Applicant argues: (1) she is an interested person because she "is or will be a litigant in the" Antigua Proceeding, Russian Proceeding, and Contemplated Criminal Proceeding; (2) the Application seeks documentary evidence; (3) the discovery sought is for use in the Antigua Proceeding, Russian Proceeding, and Contemplated Criminal Proceeding; and (4) Northrop is found in this District.  *See* ECF No. [1] at 2; ECF No. [1-1] at 39–47.  And as to the discretionary factors, Applicant argues: (1) Northrop is not a party to the Antigua Proceeding, Russian Proceeding, or Contemplated Criminal Proceeding; (2) the Antiguan, Russian Federation, and UAE Courts will likely be receptive to this Court's judicial assistance; (3) Applicant is not attempting to circumvent foreign proof-gathering restrictions; and (4) the discovery sought is not intrusive or burdensome.  *See* ECF No. [1] at 2; ECF No. [1-1] at 47–52.

## II.   LEGAL STANDARDS

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp.*, 542 U.S. at 247. The "history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance." *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (emphasis and quotation marks omitted).

"A district court has the authority to grant an application for judicial assistance if the following statutory requirements in § 1782(a) are met: (1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007) (footnote omitted) (quoting § 1782(a)). "If these requirements are met, then § 1782 'authorizes, but does not require, a federal district court to provide assistance.'" *Id.* at 1332 (quoting *Intel*, 542 U.S. at 255); *see also United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) ("[A] district court's compliance with a § 1782 request is not mandatory.").

"Once the prima facie [statutory] requirements are satisfied, the Supreme Court in *Intel* noted these factors to be considered in exercising the discretion granted under § 1782(a): (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is otherwise 'unduly intrusive or burdensome.'" *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264–65). None of these factors is required or automatically dispositive — they simply "bear consideration in ruling on a § 1782(a) request." *See Intel*, 542 U.S. at 264. In fact, even if a court concludes an application contains "unduly

6

intrusive or burdensome requests," it may still exercise its discretion to grant the application because those specific requests "may be rejected or trimmed." *Id.* at 265.

Finally, though the Supreme Court has not specifically listed it as a factor in the analysis, sometimes courts look at how granting or denying a § 1782 application would impact international comity concerns. That's because "the animating purpose of § 1782 is comity: Permitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance." *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022); *see also In re Pimenta*, 942 F. Supp. 2d 1282, 1289 (S.D. Fla. 2013) (noting "the twin aims of the statute: providing an efficient means of assistance to participants in international litigation and encouraging foreign countries to provide reciprocal assistance to our courts").

## III.   DISCUSSION

### A. Applicant Has Met the Four Requirements of § 1782

As noted above, the four factors set out in the statute govern the first step in the § 1782 analysis. *See In re Clerici*, 481 F.3d at 1331–32. Here, Applicant has met each of them.

First, an "interested person" is making Applicant's request. *See* § 1782(a); *In re Clerici*, 481 F.3d at 1331. Applicant "is or will be a litigant in the" Antigua Proceeding, Russian Proceeding, and Contemplated Criminal Proceeding. *See* ECF No. [1-1] at 47. That makes Applicant a party to all three relevant foreign proceedings, and as the Supreme Court has noted, "litigants are included among, and may be the most common example of, the 'interested persons' who may invoke § 1782." *See Intel*, 542 U.S. at 256 (alteration adopted).

Second, Applicant's request "seek[s] evidence," including the production of "'a document or other thing.'" *See In re Clerici*, 481 F.3d at 1331– 32 (quoting § 1782(a)). Indeed, the Supporting Memo explicitly notes that "the proposed subpoena plainly seeks documents, in the form of sale

records and communications with a discrete set of identified individuals," and the document requests within the subpoena are consistent with those representations. *See* ECF No. [1-1] at 42; ECF No. [1-15].

Third, the evidence Applicant seeks is "for use in a proceeding in a foreign or international tribunal." *See* § 1782(a); *In re Clerici*, 481 F.3d at 1332. As Applicant explains in the Supporting Memo, the Antiguan, Russian Federation, and UAE courts are all foreign tribunals within the scope of § 1782. *See* ECF No. [1-1] at 43. The Eleventh Circuit has "recognized that the courts of the Russian Federation qualify as foreign tribunals under" § 1782, *see Sergeeva*, 834 F.3d at 1196, and other district courts have recognized the same about Antiguan courts and UAE courts. *See* ECF No. [1-1] at 43–44. The requested discovery is for use in those proceedings because it "will be used in litigation with the Yildirim Group in the Russian Federation," with "the Government of Antigua" in the Antiguan Court, and with Browne, the Yildirim Group, and any "accomplices" in the UAE. *See* ECF No. [1-1] at 45–46.

More specifically, in the Russian Proceeding it "is expected to identify the specific transactions involved in the corrupt sale of the *Alfa Nero*," the "disposition of any ill-gotten proceeds" of that sale, and "any coconspirators who may be additional sources of evidence." *See* ECF No. [1-1] at 45. In the Antiguan Proceeding, it "will be used to challenge the seizure and sale of the *Alfa Nero*." *See* ECF No. [1-1] at 45. And in the Contemplated Criminal Proceeding, it "will be used to support a criminal complaint and respond to requests for supporting evidence from the Dubai Public Prosecutor, as well as to identify presently-unknown accomplices who may have helped to hide or launder the proceeds of the *Alfa Nero* sale on Browne's behalf." *See* ECF No. [1-1] at 45–46.

Finally, the entity from which Applicant seeks the evidence "resides or is found" in this

District.  *See* § 1782(a); *In re Clerici*, 481 F.3d at 1332.  As the Supporting Memo notes, Northrop's headquarters are in Fort Lauderdale and its registered agent is in North Palm Beach.[2] *See* ECF No. [1-1] at 40–41.  When a corporation "has an office and does business in" this District, it is found in the Southern District of Florida for purposes of § 1782.  *See Consorcio Ecuatoriano*, 747 F.3d at 1269.

For those reasons, the Court finds that Applicant has satisfied the four statutory factors under § 1782.

### B. The *Intel* Factors Weigh In Favor of Granting the Application

Once the statutory requirements are satisfied, the discretionary factors the Supreme Court set out in *Intel* govern the second step in the § 1782 analysis. *See* 542 U.S. at 264–65; *In re Clerici*, 481 F.3d at 1334.  Here, each of the four *Intel* factors weighs in favor of granting the Application. First, the entity from which Applicant seeks the discovery is not a participant in the foreign proceedings. *See Intel*, 542 U.S. at 264; *In re Clerici*, 481 F.3d at 1334.  As the Supreme Court has explained, "when the person from whom discovery is sought is a participant in the foreign proceeding," the "need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because a "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264. "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*  Northrop is not a participant in the Antigua Proceeding, Russian Proceeding, or Contemplated Criminal Proceeding, "nor is it expected to become a

---

[2] Applicant acknowledges that the relevant Northrop broker "is based in Northrop's Monaco office," but she argues that "the Eleventh Circuit has recognized that applications under § 1782 can properly be used to obtain documents stored overseas."  *See* ECF No. [1-1] at 41–42 (citing *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016)).

participant." *See* ECF No. [1-1] at 47–48. So the first *Intel* factor weighs in favor of granting Applicant § 1782(a) aid.

Second, the "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" all suggest that the Application should be granted. *See Intel*, 542 U.S. at 264; *In re Clerici*, 481 F.3d at 1334. As Applicant explains, federal courts have granted § 1782 applications for evidence to be used in proceedings in Antigua, the Russian Federation, and the UAE. *See* ECF No. [1-1] at 48–50. To do so, those courts recognized that the Antiguan, Russian Federation, and UAE courts were "likely to be receptive to such discovery." *See* ECF No. [1-1] at 48–50. Because it appears that the relevant foreign courts would be receptive to evidence gathered through a § 1782(a) proceeding, the second *Intel* factor weighs in favor of granting the Application.

Third, the Application does not "conceal[] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *See Intel*, 542 U.S. at 265; *In re Clerici*, 481 F.3d at 1334. Applicant asserts that she "seeks this discovery in good faith and is not attempting to circumvent" any of the foreign tribunals' proof-gathering restrictions. *See* ECF No. [1-1] at 50–51. She notes "there is no requirement to first seek discovery from the non-US tribunal or exhaust other options before applying to a district court for § 1782 discovery," *see* ECF No. [1-1] at 50 (quoting *In re Application of Bracha Found.*, 663 F. App'x 755, 765 (11th Cir. 2016)), but she argues that, even if there were such a requirement, it would be met here because "the Antiguan court ordered disclosure of much of this same evidence," *see* ECF No. [1-1] at 51. Because it has gone missing, however, it is "unlikely to be available in the" Antiguan Proceeding and must instead "be obtained or recreated through" § 1782 discovery. *See*

10

ECF No. [1-1] at 51.  For that reason, she argues that granting the Application "would show comity with" the Antiguan court, "not the other way around."  *See* ECF No. [1-1] at 51.  Because the "Application is brought in good faith and does not seek to circumvent any discovery procedures of the" Antigua Proceeding, Russian Proceeding, or Contemplated Criminal Proceeding, *see* ECF No. [1-1] at 51, the third *Intel* factor weighs in favor of granting the Application.

Finally, Applicant's request is not unduly intrusive or burdensome.  *See Intel*, 542 U.S. at 265; *In re Clerici*, 481 F.3d at 1334.  The Application seeks "documents and information regarding the sale and any charter of the *Alfa Nero*."  *See* ECF No. [1-1] at 52; ECF No. [1-15].  As the Supporting Memo notes, the "burden of responding to" the "subpoena should be minimal, as these are the types of records that Northrop would logically maintain and produce in the regular course of business."  *See* ECF No. [1-1] at 52.  The Court agrees with Applicant that the § 1782(a) requests seek information that is "relevant and narrowly tailored to the" Antigua Proceeding, Russian Proceeding, and Contemplated Criminal Proceeding, *see* ECF No. [1-1] at 52, making the fourth *Intel* factor weigh in favor of granting the Application.

For these reasons, the Court finds that all four *Intel* factors weigh in favor of granting the Application for § 1782 aid.

C. **Granting the Application Would Further the Policy Underlying § 1782**

As a final consideration, the Court evaluates whether granting the application would further the policy underlying § 1782, which is to encourage international comity. *See ZF Auto.*, 596 U.S. at 632; *In re Pimenta*, 942 F. Supp. 2d at 1289. Allowing Applicant to marshal the power of our courts to assist her in gathering evidence to use in the Antigua Proceeding, Russian Proceeding, and Contemplated Criminal Proceeding aligns with "Congress' wish to strengthen the power of district courts to respond to requests for international assistance." *See Consorcio Ecuatoriano*, 747

F.3d at 1269 (emphasis and quotation marks omitted). And it would certainly "encourag[e] foreign countries to provide reciprocal assistance to our courts." *See In re Pimenta*, 942 F. Supp. 2d at 1289. As a result, the Court finds that granting the application would further the international comity concerns that underlie § 1782.

## IV.    CONCLUSION

Because Applicant has satisfied the four statutory factors under § 1782, all four *Intel* factors weigh in favor of granting the Application, and granting the application would further the international comity policy underlying § 1782, it is **ORDERED and ADJUDGED** as follows:

1. The Application, **ECF No. [1]**, is **GRANTED**;

2. Applicant is authorized to issue subpoenas for documents in the form of the subpoena attached to the Application as Exhibit 13, ECF No. [1-15];

3. Discovery shall be conducted in accordance with the Federal Rules of Civil Procedure;

4. The Court reserves jurisdiction to enter further orders that are necessary and proper to enforce this Order; and

5. Applicant shall file a status report **on or before October 16, 2025**, indicating the status of the discovery identified in the Application and whether this matter may be closed.

**DONE AND ORDERED** in Chambers in Miami, Florida on July 16, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record