**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-21129-MOORE/Elfenbein

***In re***

**GASTON BROWNE**
**CORRUPTION DISCOVERY APPLICATION,**

**YULIA GURYEVA-MOTLOKHOV,**

Applicant,

**Pursuant to 28 U.S.C. § 1782 for**
**Judicial Assistance in Obtaining**
**Evidence for Use in a Foreign Proceeding**.
_________________________________________/

**ORDER ON YULIA GURYEVA-MOTLOKHOV'S *EX PARTE* SUPPLEMENTAL APPLICATION FOR JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782 TO ADD ADDITIONAL DISCOVERY SUBJECTS**

**THIS CAUSE** is before the Court on Applicant Yulia Guryeva-Motlokhov's Supplemental *Ex Parte* Application for Judicial Assistance Pursuant to 28 U.S.C. § 1782 to Add Additional Discovery Subjects (the "Supplemental Application"), ECF No. [21]. The Honorable K. Michael Moore referred this matter to me "to take all necessary and proper action as required by law regarding all pre-trial, non-dispositive matters and for a Report and Recommendation on any dispositive matters." *See* ECF No. [6]. For the reasons explained below, the Supplemental Application, **ECF No. [21]**, is **GRANTED**.

## I. BACKGROUND

The Court previously granted Applicant's *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings (the "Original Application"), ECF No. [1], in its July 16, 2026, Order on the Original Application (the "Original

Order”), ECF No. [13].

As previously detailed, the Original Application requested the entry of an order allowing Applicant to serve Northrop & Johnson Yachts-Ships LLC (“Northrop”) with a subpoena for the production of documents and explained that the purpose of the requested relief was to “obtain necessary discovery to support three ongoing foreign proceedings,” *see* ECF No. [1] at 1, that she has initiated or intends to initiate: (1) a 2023 civil action in Antigua and Barbuda “challenging the constitutionality of” a legislative act Applicant claims violated her rights “under sections 3 and 9 of the Constitution of Antigua and Barbuda” (the “Antiguan Proceeding”), *see* ECF No. [1-1] at 9; (2) a “recently instituted civil” action in the Russian Federation “seeking recovery of damages” for the illegal expropriation of Applicant’s yacht and artwork (the “Russian Proceeding”), *see* ECF No. [1-1] at 38; and (3) a “criminal complaint” Applicant “is contemplating filing” in the United Arab Emirates (the “Contemplated Criminal Proceeding” and collectively the “Original Foreign Proceedings”). *See* ECF No. [1-1] at 38; ECF No. [21-1] at 7.

Applicant explained that all three proceedings arise out of the allegedly illegal seizure and sale of the $120 million superyacht *Alfa Nero*. *See* ECF No. [1-1] at 5–17. Two trusts of which “Applicant is currently the sole adult beneficiary” owned the *Alfa Nero* and its onboard artwork. *See* ECF No. [1-1] at 5–6. “When conflict in Ukraine broke out in February 2022, the *Alfa Nero* was located in Antigua and was not sanctioned,” but “Antiguan officials publicly refused to allow the vessel to leave the harbor or provide fuel for the vessel except limited emergency supplies to keep the vessel functional,” leaving it “effectively frozen by Antiguan authorities and functionally unable to leave Antigua.” *See* ECF No. [1-1] at 6–7.

Beginning in early March 2023, Applicant’s agent repeatedly attempted to inform the Antiguan Attorney General of Applicant’s ownership interests in the *Alfa Nero* and its onboard

artwork but received no response. *See* ECF No. [1-1] at 8–9. Several weeks later, in late March 2023, the Antiguan government passed legislation authorizing the Antiguan port manager "to declare vessels abandoned" and "sell them at auction." *See* ECF No. [1-1] at 10–11. Using his new powers, the port manager "determined that the *Alfa Nero* posed an imminent threat to the harbor and the economy of Antigua and announc[ed] an intent to auction" it. *See* ECF No. [1-1] at 11. When Applicant's agent finally spoke to the Attorney General in early April, he was redirected to the port manager, but despite "repeatedly" emailing and otherwise attempting to contact the port manager to "prevent any confiscation or sale" of the *Alfa Nero*, he never responded. *See* ECF No. [1-1] at 8. So, in June 2023, Applicant filed the Antiguan Proceeding, which remains pending *See* ECF No. [1-1] at 8–10; ECF No. [21-1] at 25.

The *Alfa Nero* was ultimately sold in July 2024 through Northrop, which is a yacht broker. *See* ECF No. [1-1] at 14. The sale was "a private transaction" to an "undisclosed" buyer. *See* ECF No. [1-1] at 14. The purchase price was reportedly $40 million, which is less than the $67 million high bid received during the public auction. *See* ECF No. [1-1] at 11–13.

"Following the July 2024 sale, Applicant sought disclosure from the Antiguan courts regarding the distribution of the proceeds." *See* ECF No. [1-1] at 15. After the court in the Antiguan Proceedings "ordered the government to file an affidavit and submit relevant documents detailing the sale of the *Alfa Nero*," the government disclosed documents accounting for about $36 million of the $40 million purchase price. *See* ECF No. [1-1] at 15–16. But the disclosures failed to account for the remaining $4 million, did not indicate whether there had been a pre-sale deposit, and did not include the payment of Northrop's 4.5% commission. *See* ECF No. [1-1] at 16. The disclosures also did not identify the buyer, but according to Applicant's investigators, the buyers were "Robert Yildirim and Ali Riza Yildirim of the Yildirim Group," a Turkish construction and

shipping conglomerate, which holds the *Alfa Nero* through the Maltese entity YM Thunder I Shipping Limited ("YM Thunder"). *See* ECF No. [1-1] at 14.

Applicant's investigators tried to review "the original sale and payment records for the 2024 *Alfa Nero* sale" using Antiguan public records laws, but they were unable to do so because "they had apparently gone missing." *See* ECF No. [1-1] at 17. The Financial Secretary of the Antiguan Ministry of Finance and Corporate Governance "speculated to the investigators that the" documents "had possibly been moved within the custody of the Ministry of Finance," which is run by Minister of Finance and Prime Minister Gaston Browne. *See* ECF No. [1-1] at 17. According to Applicant, "Browne was strategically involved in the acquisition and subsequent sale of the *Alfa Nero*," *see* ECF No. [1-1] at 19, and his "administration was set to receive up to a 50% commission" on the sale, *see* ECF No. [1-1] at 15. He has also generally "faced various allegations of corruption, illegal enrichment, and conflicts of interest." *See* ECF No. [1-1] at 19.

Applicant asserted that "Browne orchestrated the sale of the *Alfa Nero* for self-interested purposes, and evidence of this corrupt motive would be critical in the" three foreign proceedings for which she seeks discovery through § 1782. *See* ECF No. [1-1] at 20. In addition to helping prove in the Antiguan Proceeding that the sale of the *Alfa Nero* was the improper result of Prime Minister Browne's self-interest, the discovery Applicant sought would aid the Russian Proceeding because it was directed at the buyers (the Yildirim Group) and current owner (YM Thunder) of the *Alfa Nero*. *See* ECF No. [1-1] at 38. And it would aid the Contemplated Criminal Proceeding because that litigation would likely include "claims against Browne and potentially the Yildirims" for "transacting in or hiding criminal proceeds under" UAE law. *See* ECF No. [1-1] at 38.

Against this backdrop, the Court granted the Original Application after finding that Applicant satisfied the four statutory requirements under 28 U.S.C. § 1782 and that the four *Intel*

discretionary factors weighed in its favor. *See* ECF No. [13] at 9, 11-12.

Now, Applicant seeks to add additional discovery subjects through the Supplemental Application, explaining that the issuance of the subpoenas and further investigation led to the discovery of additional evidence. *See* ECF No. [21-1] at 8. Specifically, she seeks leave pursuant to 28 U.S.C. § 1782 and Federal Rules of Civil Procedure 26 and 45 to serve Gaston Andron Browne III ("Browne III"); Fraser Yachts Florida, Inc. ("Fraser"), Cromwell Littlejohn ("Littlejohn"), MarineMax, Inc. ("MarineMax"), Northrop, and Warren E. Halle ("Halle" and collectively the "Discovery Subjects") with subpoenas attached to the Supplemental Application. *See* ECF No. [21] at 1; *see also* ECF Nos. [21-29]-[21-36]. According to Applicant, the goal of the requested relief is to obtain "necessary discovery" in support of four pending or contemplated foreign proceedings. *See* ECF No. [21] at 1-2. The new Discovery Subjects, Applicant explains, are "likely to possess relevant evidence not captured as part of the original § 1782 discovery." *See* ECF No. [21-1] at 16. Specifically, she seeks (1) Rule 30(b)(6) deposition of a Northrop corporate representative; (2) documents and a Rule 30(b)(1) deposition of Littlejohn, Northrop's President and Chief Commercial Officer; (3) documentary evidence from Fraser, which is Northrop's sister company and a subsidiary of MarineMax; (4) documentary evidence from MarineMax; (5) a deposition and documents from Browne III, Browne's son and business proxy; and (6) documents from Halle, a participant in the 2023 attempted sale. *See id*. at 16-20; *see also* ECF Nos [21-29]-[21-36].

In a Memorandum of Law in Support of the Supplemental Application (the "Supplemental Memo"), ECF No. [21-1], Applicant provides several detailed updates forming the basis for the Supplemental Application. These updates explain how Applicant collected evidence as a result of the subpoenas issued pursuant to the Original Order and the need for further discovery *See* ECF

No. [21-1] at 6-8. Applicant also explains that Browne instituted a defamation lawsuit against Applicant's lead counsel, Martin De Luca and Boies Schiller Flexner LLP, his law firm (the "BSF Applicants") after Applicant started "deploying" the discovery obtained through the Original Application. *See id*. at 14. The Supplemental Memo notes that the BSF Applicants join Applicant in requesting the discovery sought in the Supplemental Application "solely for purposes of their defense in the Antigua Defamation Action." *See id*. at 14.

Applicant argues the Court should grant the Supplemental Application because it meets all four statutory requirements under § 1782 and all four discretionary factors the Supreme Court set out in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). *See* ECF No. [21] at 2; ECF No. [21-1] at 20-30. Specifically, Applicant asserts that the Court should grant the Supplemental Application for the same reasons as the Original Application and needs to only consider requirements at issue or that have likely changed since issuing the Original Order. *See id*. at 20-21. Regarding the statutory arguments, Applicant and BSF Applicants contend (1) she "remains an 'interested person' in the Original Foreign Proceedings;" (2) the Supplemental Application seeks evidence; (3) the new discovery subjects "reside or are found" in the Southern District of Florida; and (4) the discovery is "for use" in the foreign proceedings. *See id*.

As to the discretionary factors, Applicant and BSF Applicants similarly assert that the Original Foreign Proceedings are the same ones which formed the basis of the Original Application and that the *Intel* factors regarding the receptivity of the foreign tribunal to federal court assistance and whether the request conceals an attempt to circumvent foreign proof-gathering restrictions are not at issue. *See id*. at 27. They assert that the remaining *Intel* factors weigh in favor of granting the Supplemental Application. *See id*. at 27-31. The Supplemental Memo addresses all statutory and discretionary factors as related to the Antiguan Defamation Action and BSF Applicants. *See*

*id*. at 20-21, 27.

## II. LEGAL STANDARDS

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp.*, 542 U.S. at 247. The "history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance." *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (emphasis and quotation marks omitted).

"A district court has the authority to grant an application for judicial assistance if the following statutory requirements in § 1782(a) are met: (1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007) (footnote omitted) (quoting § 1782(a)). "If these requirements are met, then § 1782 'authorizes, but does not require, a federal district court to provide assistance.'" *Id.* at 1332 (quoting *Intel*, 542 U.S. at 255); *see also United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) ("[A] district court's compliance with a § 1782 request is not mandatory.").

"Once the prima facie [statutory] requirements are satisfied, the Supreme Court in *Intel* noted these factors to be considered in exercising the discretion granted under § 1782(a): (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence

is sought from a nonparticipant'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is otherwise 'unduly intrusive or burdensome.'" *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264–65). None of these factors is required or automatically dispositive — they simply "bear consideration in ruling on a § 1782(a) request." *See Intel*, 542 U.S. at 264. In fact, even if a court concludes an application contains "unduly intrusive or burdensome requests," it may still exercise its discretion to grant the application because those specific requests "may be rejected or trimmed." *Id.* at 265.

Finally, though the Supreme Court has not specifically listed it as a factor in the analysis, sometimes courts look at how granting or denying a § 1782 application would impact international comity concerns. That's because "the animating purpose of § 1782 is comity: Permitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance." *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022); *see also In re Pimenta*, 942 F. Supp. 2d 1282, 1289 (S.D. Fla. 2013) (noting "the twin aims of the statute: providing an efficient means of assistance to participants in international litigation and encouraging foreign countries to provide reciprocal assistance to our courts").

## III. DISCUSSION

### A. Applicant Has Met the Four Requirements of § 1782

As noted above, the four statutory factors govern the first step in the § 1782 analysis. *See In re Clerici*, 481 F.3d at 1331–32. Here, Applicant and BSF Applicants have met each of them.

First, an "interested person" is making Applicant's request. *See* § 1782(a); *In re Clerici*,

481 F.3d at 1331. The Court has already ruled that Applicant met this factor in the Original Order, as it relates to the Original Foreign Proceedings. *See* ECF No. [13] at 7-8. Applicant represents that the circumstances underlying that ruling remain the same. *See* ECF No. [22-1] at 21. The BSF Applicants are also "interested persons" within the meaning of the statute because they are defendants in the Antiguan Defamation Action. *See id*. at 27. Because Applicant still "is or will be a litigant in the" Original Foreign Proceedings and BSF is a litigant in the Antiguan Defamation Action, they are both parties to the relevant foreign proceedings, and as the Supreme Court has noted, "litigants are included among, and may be the most common example of, the 'interested persons' who may invoke § 1782." *See Intel*, 542 U.S. at 256 (alteration adopted).

Second, the Supplemental Application "seek[s] evidence," including the production of "'a document or other thing.'" *See In re Clerici*, 481 F.3d at 1331– 32 (quoting § 1782(a)). Indeed, the Supplemental Memo explicitly notes that "the proposed subpoena[s] plainly seek[] documents, in the form of sale records and communications with a discrete set of identified individuals," and the document requests within the subpoena are consistent with those representations. *See* ECF Nos. [21-1] at 26 and [21-29]-[21-36].

Third, the discovery the Supplemental Application seeks is "for use in a proceeding in a foreign or international tribunal." *See* § 1782(a); *In re Clerici*, 481 F.3d at 1332. As explained in the Supplemental Memo, the Antiguan, Russian, and UAE courts are all foreign tribunals within the scope of § 1782. *See* ECF No. [21-1] at 24. The Eleventh Circuit has "recognized that the courts of the Russian Federation qualify as foreign tribunals under" § 1782, *see Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1196 (11th Cir. 2016), and the Court previously explained that other district courts have recognized the same about Antiguan and UAE courts. *See* ECF No. [13] at 8-9. The requested discovery is for use in those proceedings because Applicant already

presented the discovery obtained via the Original Application in proceedings in Russia and intends to use the new discovery in the same way. *See* ECF No. [21-1] at 24-26. Applicant and BSF Applicants explain that the Antiguan proceedings are currently pending before the Eastern Caribbean Supreme Court, another "qualifying tribunal," and that Antiguan law and procedure allow use of discovery obtained through the Supplemental Application before or after judgment as well as in contemplated appeals. *See id.* at 24-25. Further, the new Antiguan Defamation Action is also pending before the Eastern Caribbean Supreme Court and the BSF Applicants intend to "provide discovery obtained through this Supplemental Application for use in that action, including to support a defense of truth." *See id.* The Supplemental Memo indicates that the contemplated UAE criminal investigation against Browne constitutes a proceeding and that Applicant "will be able to present evidence to the UAE Federal Public Prosecution for investigation and initiation of criminal proceedings." *See id.* [1]

Finally, the entities from which Applicant and the BSF Applicants seek the evidence "reside[] or [are] found" in this District. *See* § 1782(a); *In re Clerici*, 481 F.3d at 1332. Regarding the entities, the Supplemental Memo notes Northrop's headquarters are in Fort Lauderdale, and its registered agent is in North Palm Beach.[2] *See* ECF No. [21-1] at 22. Fraser's principal address is in Fort Lauderdale and registered agent is in North Palm Beach. *See id.* at 22. The Supplemental Memo notes that Fraser and Northrop are sister companies and subsidiaries of Florida-based boat dealer Marine Max. *See id.* at 17. MarineMax is incorporated in Florida and has "11 offices within

[1] Applicant's July 13, 2026, Status Report, indicates that the Original Foreign Proceedings and Antiguan Defamation Action are pending and that the there has "been no change in the status of the Emirati Contemplated Proceedings since the last status report filed on April 10, 2026" and indeed since filing the Supplemental Application. *See* ECF No. [24] at 4.

[2] Applicant explains that the Court previously found Northrop "resides or is found" in the District within the meaning of § 1782. *See* ECF No. [21-1] at 22, n. 23.

this District." *See id.* at 21; *see also id.* at 18-19. When a corporation "has an office and does business in" this District, it is found in the Southern District of Florida for purposes of § 1782. *See Consorcio Ecuatoriano*, 747 F.3d at 1269.

Regarding the individuals, courts in the Southern District of Florida frequently analyze the discovery subject's contacts with the district in determining whether he or she or "is found" or "resides" in the District for purposes of § 1782. *Terra Inv., LLC*, No. 21-CV-23332, 2023 WL 21014, at *5 (S.D. Fla. Jan. 3, 2023). In determining whether an individual "resides in" its district, the district court analyzing the § 1782 application can turn to applicable state law for guidance. *See In re Terra Inv., LLC*, No. 21-CV-23332, 2022 WL 18662732, *2 (S.D. Fla. Nov. 7, 2022), *report and recommendation adopted in part sub nom. Terra Inv., LLC*, 2023 WL 21014. In determining whether a discovery subject is "found" in the district, the Court "should 'look at the respondent's contacts with the forum' and whether 'the discovery material sought proximately resulted from the respondent's forum contacts.'" *Id.* (quoting *In re Deposito Centralizado de Compensacion y Liquidacion de Valores Decevale, S.A.*, No. 20-MC-25212, 2021 WL 2323226, *5 (S.D. Fla. June 1, 2021)).

The Court finds Applicant and BSF Applicants have sufficiently shown that Littlejohn, Browne III, and Halle all are "found" in the District. *See* ECF No. [21-1] at 21-22. They explain that Littlejohn is based in Northrop's Fort Lauderdale office, serves as Northrop's President and Chief Commercial Officer, and "apparently resides there." *See id.* at 16, 22. The Supplemental Memo details that Littlejohn was "closely involved in negotiating the 2024 sale of the *Alfa Nero*." *See id.* at 16; *see also id.* at 13 (explaining that documents obtained via the Original Order showed, *inter alia*, that Northrop's lead broker sent Littlejohn emails during the relevant time period regarding the negotiations related to the sale of the *Alfa Nero*). Next, the Supplemental Memo

indicates that Browne III "holds himself out as working in this District and doing business here." *See id*. It also indicates that he graduated from University of Miami, has a vehicle registered in Florida, and has received traffic violations in the state. *See id*. Applicant and BSF Applicants explain that Browne III is Browne's son, proxy, and beneficiary who is "likely to possess critical information about the 2024 sale of the *Alfa Nero* and associated kickback; his father's business partners, ventures, and real estate holdings (including his extensive properties allegedly located in this District); and the disposition of the sale proceeds and kickback." *See id*. at 19, 22. Finally, the Supplemental Memo notes that Halle resides in Jupiter, Florida, according to voter records. *See id*. at 19, n. 22, 22. It also details that Halle was a bidder for the *Alfa Nero*'s attempted sale in 2023, and because of this, he likely "possesses relevant information on how the attempted sale was structured and carried out by the Antiguan government; Prime Minister Browne's actions, communications, and personal involvement in the attempted sale; the actions, communications, and personal involvement in the attempted sale of key individuals and proxies of the Antiguan government; the scope and substance of U.S. government involvement in the attempted sale; and the condition, valuation, and sale price of the *Alfa Nero*." *See id*. at 19-20, 22.

The Court finds that Applicant and BSF Applicants have sufficiently provided "additional specificity concerning the discovery [they] seek[] to allow [the Court] to evaluate whether the discovery requested is connected to the forum." *See In re Deposito Centralizado de Compensacion y Liquidacion de Valores Decevale, S.A.*, 2021 WL 2323226, at *5 (quotations and citations omitted). The detailed explanations as to the discovery Applicant and BSF Applicants seek from Littlejohn, Browne III, and Halle sufficiently explain how each of these individual's contacts with the Southern District of Florida is related to the Original Foreign Proceedings and Antiguan Defamation Action, thus satisfying this § 1782 requirement.

For the reasons explained above, the Court finds that Applicant and BSF Applicants have satisfied the four statutory factors under § 1782.

**B. The *Intel* Factors Weigh In Favor of Granting the Application**

Once the statutory requirements are satisfied, the discretionary factors the Supreme Court set out in *Intel* govern the second step in the § 1782 analysis. *See* 542 U.S. at 264–65; *In re Clerici*, 481 F.3d at 1334. Here, each of the four *Intel* factors weighs in favor of granting the Supplemental Application.

First, the Discovery Subjects are not participants in the foreign proceedings. *See Intel*, 542 U.S. at 264; *In re Clerici*, 481 F.3d at 1334. As the Supreme Court has explained, "when the person from whom discovery is sought is a participant in the foreign proceeding," the "need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because a "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264. "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* Northrop, Fraser, MarineMax, Littlejohn, Andron, and Halle are not participants in the Russian or Antiguan proceedings, and the Supplemental Application explains that they are "not expected to become participants in them" or in the "contemplated UAE criminal investigation." *See* ECF No. [21-1] at 27-28. So, the first *Intel* factor weighs in favor of granting § 1782(a) aid to Applicant and the BSF Applicants.

Second, the "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" all suggest that the Supplemental Application should be granted. *See*

*Intel*, 542 U.S. at 264; *In re Clerici*, 481 F.3d at 1334. As Applicant explains, the Court has already found foreign courts presiding over the Original Foreign Proceedings to be receptive to § 1782 assistance and there have been no new developments suggesting otherwise. *See* ECF No. [21-1] at 28. Applicant contends that the same conclusion applies to the Antigua Defamation Action, which is pending before the Eastern Caribbean Supreme Court, because it is before the same tribunal that the Court assessed in the Original Application. *See id*. Because it appears that the relevant foreign courts would be receptive to evidence gathered through a § 1782(a) proceeding, the second *Intel* factor weighs in favor of granting the Supplemental Application.

Third, the Supplemental Application does not "conceal[] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *See Intel*, 542 U.S. at 265; *In re Clerici*, 481 F.3d at 1334. Applicant and BSF Applicants assert that the Court's previous conclusion that Applicant "sought discovery in good faith and did not attempt to circumvent the proof-gathering rules applicable to the Russian, Antiguan, or UAE proceedings" should apply to the Supplemental Application because "nothing has changed to alter that determination." *See* ECF No. [21-1] at 28. They assert that the same analysis applies to the Antigua Defamation Action since it is "pending before the same Antiguan Court and is governed by the same procedural and evidentiary framework as the existing Antiguan proceeding." *See id*. The Supplemental Memo notes that because § 1782 does not "require exhaustion of foreign discovery mechanisms or that the requested evidence be discoverable under foreign law, and because Antiguan law provides mechanisms for admitting foreign evidence upon application to the court, the Supplemental Application does not seek to circumvent Antiguan proof-gathering restrictions." *See id*. at 27-29. Accordingly, the Court finds that this *Intel* factor weighs in favor of granting the Supplemental Application.

Finally, Applicant and BSF Applicants' request is not unduly intrusive or burdensome. *See Intel*, 542 U.S. at 265; *In re Clerici*, 481 F.3d at 1334. The Supplemental Application seeks documents and information from the Discovery Subjects regarding "core issues" in the Foreign Proceedings" such as (1) "confiscation and sale of the *Alfa Nero*;" (2) "disposition of the sale proceeds;" (3) *"Alfa Nero*'s condition and fair valuation leading up to the sale;" (4) "sale negotiations;" and (5) the "legislative objective of the authorizing statute." *See* ECF No. [21-1] at 29-30. The Supplemental Memo notes that these issues "bear directly on the truth or falsity of the statements at issue in the Antigua Defamation Action" because they "shed light on the factual accuracy of De Luca's statements regarding the sale price, the negotiation process, Browne's involvement, and the handling of sale proceeds." *See id*. Applicant and BSF Applicants note that the discovery requests are narrowly tailored in temporal scope to target the specific activities relevant to the case and that the burden in responding to the subpoenas would be minimal. *See id*. at 30. This is because these documents are the kinds of records the Discovery Subjects "typically maintain and produce in the regular course of business." *See id*. Applicant and BSF Applicants also note that the Discovery Subjects would need to make a specific showing regarding burden if they were to object on that basis and until then, discovery is appropriate. *See id*. The Court agrees that the § 1782 requests seek information that is "relevant and narrowly tailored to the" Original Foreign Proceedings and Antiguan Defamation Action, *see id*. at 29-30, making the fourth *Intel* factor weigh in favor of granting the Supplemental Application.

For these reasons, the Court finds that all four *Intel* factors weigh in favor of granting the Supplemental Application for § 1782 aid.

**C. Granting the Supplemental Application Would Further the Policy Underlying § 1782**

As a final consideration, the Court evaluates whether granting the Supplemental

Application would further the policy underlying § 1782, which is to encourage international comity. *See ZF Auto.*, 596 U.S. at 632; *In re Pimenta*, 942 F. Supp. 2d at 1289. As Applicant and BSF Applicants note, the Court previously found that granting the Original Application would further international comity. *See id*. at 32. Similarly, regarding the Supplemental Application, "targeted supplemental discovery from sources located within this District will illuminate critical and dispositive issues pending in the Foreign Proceedings and further § 1782's central comity purpose." *See id*. The Court sees no reason to reach a different conclusion here. As a result, the Court finds that granting the Supplemental Application would further the international comity concerns that underlie § 1782.

## IV. CONCLUSION

Because Applicant and the BSF Applicants have satisfied the four statutory factors under § 1782, all four *Intel* factors weigh in favor of granting the Supplemental Application, and granting the application would further the international comity policy underlying § 1782, it is **ORDERED and ADJUDGED** as follows:

1. The Supplemental Application, **ECF No. [21]**, is **GRANTED**;
2. Applicant is authorized to issue subpoenas for documents in the form of the subpoenas attached to the Supplemental Application as Exhibits A-H, ECF Nos. [21-29]-[21-36];
3. Discovery shall be conducted in accordance with the Federal Rules of Civil Procedure;
4. The Court reserves jurisdiction to enter further orders that are necessary and proper to enforce this Order; and
5. Applicant shall file a status report **on or before November 9, 2026**, indicating the status of the discovery identified in the Supplemental Application and whether this matter may be closed.

**DONE AND ORDERED** in Chambers in Miami, Florida on September 7, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record